WELD–NEVILLE COTTON CO. v. ELDER, DEMPSTER & CO., Limited.   (No. 7566.)

(Court of Civil Appeals of Texas.   Galveston. May 7, 1918.   Rehearing Denied June 27, 1918.)

SHIPPING ⚷108—SPACE OF SHIPMENT—ACTION—RIGHT OF RECOVERY.

Where steamship owners sued cotton shippers because cotton shipped was not "Webb high density cotton" as agreed, and took up too much room, they could not recover when court found that cotton turned out by Webb high density presses in workmanlike manner, without reference to density, was generally regarded as compliance with contract calling for such cotton, notwithstanding further finding that such cotton should have specified average minimum density.

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Action by the Elder, Dempster & Co., Limited, against the Weld-Neville Cotton Company.   Judgment for plaintiff, and defendant appeals.   Reversed and remanded.

C. C. McRae and Baker, Botts, Parker & Garwood, all of Houston, for appellant. Edw. F. Harris and Harris & Harris, all of Galveston, for appellee.

GRAVES, J.   Appellee sued appellant in the court below for $3,500 damages, alleged to have accrued by reason of 2,000 bales of the latter's cotton having taken up more space on the former's steamship between Texas City, Tex., and Havre, France, than it should have done under their contract. Judgment for $1,103.45 was entered in favor of appellee, from which this appeal is taken.

A very succinct statement of the contract as declared upon by appellee is taken from its brief, page 20, as follows:

"The plaintiff alleged that the defendant contracted to furnish for transportation 2,000 bales of 'high density Webb compressed cotton,' and the defendant failed to keep and perform its contracts, *in that it did not deliver to plaintiff 2,000 bales of high density Webb compressed cotton, but delivered to plaintiff 2,000 bales of Webb compressed cotton which were not of high density as contracted for*; that the density of said cotton so delivered fell far below the density contracted for, to the damage of the plaintiff in the sum of $3,500.00; that high density Webb compressed cotton has a minimum density of about twelve pounds per cubic foot greater than the minimum density of standard compressed cotton; that the average density of the cotton furnished by defendant was about ten per cent. less than the density contracted for in the use of the words in the contract 'high density Webb compressed cotton,' to the damage of the plaintiff in said sum of $3,500.00."

The italics appearing are our own, inserted to specially point out in what particular the Dempster Company charged the Neville Company with having breached the contract between them; thus by its own statement, which is an accurate digest of its pleadings, the only respect in which it claimed the contract to have been violated was in the failure of the Neville Company to furnish it cotton of as high density as contract-

ed for; it is true that no fixed high density is specifically alleged, as appellant erroneously, we think, contends; but the inevitable effect of the averments made is that at least some certain high density per cubic foot as a minimum was contemplated in using the term, "high density Webb compressed" cotton; that is, in putting those words into their agreement, the parties mutually understood and intended that the 2,000 bales to be furnished by the one and carried across the ocean by the other should not fall below some fixed density per cubic foot, and consequently, being just so compact, should only take up so much definitely determinable room within the ship, and no more. Indeed, that is not only the plainly conceded effect of its pleading as made by appellee in the statement already quoted from its brief, but likewise follows from the nature of the sole recovery it sought, to wit, compensation for the wrongful taking up by appellant of more room in the ship than it was entitled to.

Nor is the net result of this analysis of its position changed in the least by the contention of appellee that it did not allege the existence of such a trade usage or custom as required the cotton to be of a minimum density of 34 pounds per cubic foot in order to comply with the terms of this contract. Concession may be freely made that such was not done; that the only custom it alleged had reference to the rate per 100 pounds for ocean transportation, and, further, that its detailed allegation, "that high density Webb compressed cotton has a minimum density of to wit: about twelve pounds per cubic foot greater than the minimum density of standard compressed cotton," gave appellee a play in density of several pounds per cubic foot, within the limits of which might be found the precise weight necessary to make it "high density Webb compressed" cotton, yet still such a minimum was necessarily asserted to exist; otherwise there could have been no possible way disclosed, under the case made by the pleadings, of arriving at how much or how little room in the ship the 2,000 bales contracted for either should have, or in fact did take up.

So that it is quite beyond controversy that appellee, having first pleaded that the freight rate for transporting the cotton was based upon its density, grounded its case upon the contention that the cotton it here carried, on account of not having at least the minimum density required by the contract, occupied more room upon its ship than it would have occupied had it been of the proper density, and the damages sought were for the additional room used.

Such being the nature of the right claimed, on turning to the findings of fact it is disclosed that the court, having tried the case without a jury, found there was at that time no trade usage fixing the specific number of pounds to the cubic foot as the minimum den-

sity of the cotton contracted for; the relevant parts of its findings of both fact and law being these:

"(4) There was in January, 1916, no trade usage at Houston, Galveston, or Texas City fixing a specific number of pounds to the cubic foot as the minimum 'density' of the cotton contracted for. * * *

"(5) The ship agents had endeavored to fix a minimum density of 34 pounds, but did not live up to it themselves, and the attempt even was not generally known to cotton exporters, such as the defendant in this case, who had neither knowledge or notice of it. *Exporters generally at the time regarded any cotton turned out by Webb high density presses in shipshape, or in workmanlike manner, as compliance with contracts such as sued on, and knew of no different contention.*

"(6) Ship agents, more or less generally, stipulated in contracts such as those sued on, the minimum density required in the particular transaction varying from 32 to 34 pounds, some would have accepted cotton as low as 30 pounds density as in compliance with such contracts.

"(7) My conclusion is that cotton turned out by a Webb high density press in a workmanlike manner should have had a minimum average density of 32 pounds to the cubic foot.

"(8) The cotton furnished by the defendant had gone through a Webb high density press, but it had not all been compressed in a workmanlike manner. Its average density was 31 pounds.

"Law.

"In the absence of a usage of trade as to what constituted Webb high density cotton at the time of the making of these contracts, the true measure of plaintiff's right and of the defendant's liability is for cotton turned out by Webb high density presses in a workmanlike manner."

[1] If, as is strongly indicated both in the portion of the fifth finding we have italicized and in the succeeding conclusion of law, the court meant to find, and upon that as a basis to so adjudge, that cotton turned out by Webb high density presses in shipshape, or in workmanlike manner, *without any reference to* density, was then generally regarded as a compliance with a contract calling for "high density Webb compressed" cotton, it follows from the preceding deductions that the judgment was founded on a state of case not declared upon by the appellee. In such circumstances no recovery could stand. Krohn v. Heyn, 77 Tex. 319, 14 S. W. 130; Plow Works v. Morris, 17 Tex. Civ. App. 6, 42 S. W. 652.

It may be, however, that the court did not intend to so find, but really meant to determine that the contract term "high density Webb compressed" cotton was generally understood as designating cotton turned out by Webb high density presses in a workmanlike manner, and having a minimum average density of 32 pounds per cubic foot. That view would be permissible by considering the seventh finding a mere corollary to the preceding ones, despite the fact that their form indicates each to be a complete proposition within itself.

On the other hand, if the court in this seventh finding simply undertook to ingraft upon this contract, anyway, his conclusion that "high density Webb compressed" cotton should have had an average minimum density of 32 pounds per cubic foot, after having first found no such density was either therein specified, or understood by the trade to be an inherent condition thereof, the manifest result was the unauthorized making of another and different contract than that sued upon, and the consequent adding of a basis of recovery not contended for.

When the statement of facts is looked to, we are inclined to think the evidence in the record would have justified a finding either way, and if the one last supposed was intended, further that, by indulging every reasonable inference in aid of the sufficiency of appellee's pleading, since only a general demurrer was interposed against it, the allegations were broad enough to cover the kind of case thereby assumed to have been developed. If, however, the meaning first outlined should be read into the findings, it is clear the pleading did not comprehend that character of case.

Upon the record as a whole, the conclusion has been reached that the ends of justice would best be subserved by remanding the cause for another trial, in order that opportunity be afforded for clearing up the matters thus left in doubt by the pleadings and the findings. Such parts of the various assignments of appellant as present the questions discussed are therefore sustained; it being deemed unnecessary to discuss them separately. They have all been carefully considered, however; and, if any material errors not disposed of in the conclusions stated are pointed out, it is not thought they are such as will probably occur upon another trial.

Pursuant to the views expressed, the judgment is reversed and the cause remanded.

Reversed and remanded.